## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **JASON MOBERLY** | : | **Case No. 1-08-cv-00569** |
| | : | |
| **Plaintiff,** | : | **Judge Weber** |
| | : | |
| | : | |
| **vs.** | : | |
| | : | |
| | : | |
| **UNIVERSITY OF CINCINNATI,** | : | |
| **et al.** | : | |
| | : | |
| **Defendants.** | : | |

---

## PLAINTIFF JASON MOBERLY'S RESPONSE TO DEFENDANTS' FIRST SET OF INTERROGATORIES

---

### GENERAL OBJECTIONS

1.     The responses to these discovery requests have been made to the best of Plaintiff's knowledge based on information currently known to Plaintiff.   Pursuant to Civ. R. 26(e), Plaintiff reserves the right to produce any subsequently discovered information and/or supplement or modify their answers herein.

2.     Plaintiff objects to the discovery requests insofar as they are vague, ambiguous, overly broad or burdensome, irrelevant and/or not reasonably calculated to lead to the discovery of relevant or admissible evidence.   Plaintiff specifically objects insofar as they seek information that is irrelevant or not reasonably related to incidents, occurrences, time frames or subject matters involving Defendant.

3.     Plaintiff objects to the discovery requests insofar as they seek information that is confidential and protected by the attorney-client privilege or attorney work-



product doctrine, including trial preparation materials. Any information covered by this general objection will not be produced. If documents are to be produced that in part contain information covered by this general objection, where appropriate Plaintiff will produce the documents with the protected information redacted.

4.      Plaintiff objects to the discovery requests insofar as they seek information that is confidential and proprietary business or private information, including, but not limited to, trade secrets, personnel information, financial data, customer information, self-critical analyses or any other highly sensitive information or documentary material.

5.      Plaintiff objects to the discovery requests insofar as they seek personal or private information regarding individuals other than Defendant. This personal or private information is confidential; Plaintiff is not authorized by law or otherwise to disclose such information absent a properly executed release from these individuals.

6.      Plaintiff objects to the discovery requests insofar as they ask Plaintiff to provide information that is not within his possession, custody or control, thereby compelling Plaintiff to speculate when answering.

7.      Plaintiff objects to the discovery requests insofar as they require responses that are neither appropriate nor required under the Federal Rules of Civil Procedure.

8.      Plaintiff's responses to the discovery requests do not concede the relevancy, materiality or admissibility of the information produced. Plaintiff's responses are subject to and without waiver of any objection to the competency, overbreadth, relevancy, materiality, privileged nature or admissibility of the information produced for any other purpose.

9.      In responding to discovery requests, Plaintiff may or may not specifically reference a General Objection. If Plaintiff does not specifically reference a General

2

Objection is answering a particular Requests, the General Objections remain applicable to the Request.

## INTERROGATORIES

1.     Identify all persons with knowledge or information about any allegation contained in the Complaint and identify each person's address, phone number, and the substance of the knowledge or information you expect each individual to possess.

**ANSWER:**     Objection to the extent Interrogatory seeks information not reasonably believed to believed to be within the personal knowledge of Plaintiff. Subject to and without waiving said objection, Plaintiff answers as follows:

1.  Ann Appleton
    Assistant Dean, Enrollment and Student Services
    University of Cincinnati, Clermont Campus
    CLER STUSVCS 140c
    Batavia, Ohio 45103
    (513) 732-8964

    Ms. Appleton has knowledge regarding Plaintiff's employment, Clermont's process for hiring an Assistant Basketball Coach in 2008 and some of the allegations in the Complaint.

2.  Kimberly Ellison
    Director of Clermont Student Life
    University of Cincinnati, Clermont Campus
    CLER PETE 18
    4200 Clermont College Dr.
    Batavia, Ohio 45103
    (513) 732-5221

    Ms. Ellison has knowledge regarding Plaintiff's employment, Clermont's process for hiring an Assistant Basketball Coach in 2008 and some of the allegations in the Complaint.

3.  Karen Faaborg, JD
    Senior Associate Vice President/Chief Human Resources Officer
    University of Cincinnati
    UNIV HALL 350-H
    P.O. Box 210087
    Cincinnati, Ohio 45221
    (513) 556-1015

3

Ms. Faaborg has knowledge regarding the grievance Plaintiff filed with the University and some of the allegations in the Complaint.

4. John Hurley
   Head Coach, Men's Basketball
   University of Cincinnati, Clermont Campus
   CLER PETE 26
   4200 Clermont College Dr.
   Batavia, Ohio 45103
   (513) 558-1559

Mr. Hurley has knowledge regarding Plaintiff's employment, Clermont's process for hiring an Assistant Basketball Coach in 2008 and some of the allegations in the Complaint.

5. James McDonough, Ph.D.
   Dean
   University of Cincinnati, Clermont Campus
   CLER EDU 200
   4200 Clermont College Dr.
   Batavia, Ohio 45103
   (513) 558-5209

Dean McDonough has knowledge regarding Plaintiff's employment, Clermont's process for hiring an Assistant Basketball Coach in 2008 and some of the allegations in the Complaint.

6. Brian Sullivan
   Program Coordinator, Athletics
   University of Cincinnati, Clermont Campus
   CLER PETE 26
   4200 Clermont College Dr.
   Batavia, Ohio 45103
   (513) 558-1559

Mr. Sullivan has knowledge regarding Plaintiff's employment, Clermont's process for hiring an Assistant Basketball Coach in 2008 and some of the allegations in the Complaint.

7. George Wharton
   Director, Human Resources – Equal Opportunity
   University of Cincinnati
   UNIV HALL 250
   P.O. Box 210214
   Cincinnati, Ohio 45221
   (513) 556-5508

4

Mr. Wharton has knowledge regarding the University's investigation of Plaintiff's complaint and some of the allegations in the Complaint.

8. Stephan Dunn
   525 Mithoff Ct.
   Columbus, Ohio 43206

Mr. Dunn has knowledge of the treatment of student athletes at the University.

9. Anthony Roberts
   950 Helen St.
   Milford, OH 45150

Mr. Roberts has knowledge of the treatment of student athletes at the University.

10. Monica Johnson
    Clermont Student Services Department
    University of Cincinnati, Clermont Campus
    4200 Clermont College Dr.
    Batavia, Ohio 45103

Ms. Johnson has knowledge of the treatment of student athletes at the University.

2.      Identify all persons who have provided a statement (oral or written) related to this matter.  Provide the name of the person from whom the statement was taken, the person's address, the person's phone number, the date that the statement was taken, and the subject matter of the statement.

**ANSWER**:

John Hurley, Men's Basketball Head Coach
University of Cincinnati, Clermont Campus

Mr. Hurley provided a statement on September 5, 2008 regarding the process used to hire a new assistant men's basketball coach for the 2008-2009 school year.

5

3.     Identify all persons, including experts, who you intend to call as witnesses in a trial of this matter.

**ANSWER:**  Objection; request is premature.  Plaintiff will seasonably identify all trial witnesses in accordance with the court's scheduling order in this case.

4.     Identify all legal proceedings (including bankruptcy proceedings) in which you have been a witness, party, charging party or complainant and for each proceeding, state the name and number of the case, the court or administrative agency before which the case was pending, a brief description of the nature of the case, and the year in which the case was pending.

**ANSWER:**

- *Moberly v. Moberly*, Fayette County Court of Common Pleas, Division of Domestic Relations, Case No. 06DRC00436.
  -Decree of Dissolution filed October 6, 2006.

5.     Identify by category all damages for which you seek recovery.

   a.     List the amount of damages you claim for each category of damages.

   b.     Explain the calculations used in determining the amount you claim for each category of damages.

**ANSWER:**  Objection to the extent Interrogatory seeks information protected by the attorney work product doctrine.   Subject to and without waiving said objection, the categories of damages sought by Plaintiff are not susceptible to mathematical computation.   Plaintiff intends to ask a jury to determine an appropriate award of punitive and compensatory damages based upon the nature of the evidence produced at trial.

6

6.     Identify all injunctive remedies you intend to seek in this case.

**ANSWER:**

Plaintiff may pursue a claim for equitable relief in the form of reinstatement to the Assistant Coach position if future events warrant.

7.     Have you consulted with or sought treatment from any physicians, health care providers, psychologists, psychiatrists, and counselors relating in any way to the claims in your Complaint? If yes, please identify all such physicians, healthcare providers, psychologists, psychiatrists, and counselors, including the name, address, telephone number, dates of consultation, correspondence or reports issued in connection with the visit or consultation, diagnoses, and any resulting treatment.

**ANSWER:**

At this time, Plaintiff has not consulted or sought treatment from any medical professionals in connection with the claims which form the basis of his Complaint.

Plaintiff reserves the right to supplement and/or modify his answer to this Interrogatory in the event of future treatment.

Respectfully Submitted,

_____
MARC D. MEZIBOV (OH No. 0019316)
SUSAN M. LAWRENCE (OH No. 0082811)
401 East Court Street, Suite 600
Cincinnati, OH 45202
Telephone: (513) 621-8800
Fax: (513) 621-8833
mmezibov@mezibov.com
slawrence@mezibov.com

Trial Counsel for Plaintiff Jason Moberly

7

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served via electronic and regular US Mail this 1st day of May, 2009 to Mitchell D. McCrate, Office of the General Counsel, University of Cincinnati, Mail Location 0623, University Pavilion, Suite 650, Cincinnati, OH 45221-0623 and Daniel J. Hoying and Doreen Canton, Taft, Stettinius and Hollister LLP, 425 Walnut St., Suite 1800, Cincinnati, OH 45202-3957.

MARC D. MEZIBOV (OH No. 0019316)

## VERIFICATION

COUNTY OF ___Hamilton___ )

STATE OF ___Ohio___ )  ) SS:

I, Jason Moberly, being first duly sworn and cautioned, depose and state that the answers to Defendants' First Set of Interrogatories are true and complete to the best of my knowledge.

_Jason Moberly_
Jason Moberly

Subscribed and sworn to before me this ___ day of ___May___ 2009.

Notary Public

MARC. D. MEZIBOV. Attorney At Law
Notary Public. State of Ohio
My Commission Has No Expiration
Date. Sec. 147.03 R.C.

DEC/02/2008/TUE 10:16 AM   UC PUBLIC SAFETY      FAX No. 513 556 4940         P. 001

AGENCY/2TJ531                                         DATE PRINTED/2008OCT27
        UNIV. OF CINCINNATI CAMPUS PD
        ANNA HOLLEY
        #3 EDWARDS CENTER
        51 WEST CORRY BLVD
        CINCINNATI, OH 45221

IDENTIFYING DATA RECEIVED FROM ABOVE AGENCY FOR RECORD CHECK:
NAME SUBMITTED/MOBERLY, JASON C    DATE OF BIRTH/▉▉▉▉▉▉  SOC/▉▉▉▉▉▉▉

-------------------------------------------------------------------
    COMPUTERIZED CRIMINAL HISTORY RECORD BASED ON FINGERPRINTS SUBMITTED TO
          STATE OF OHIO, OFFICE OF THE ATTORNEY GENERAL
              BUREAU OF CRIMINAL IDENTIFICATION & INVESTIGATION
                    P.O. BOX 365, LONDON, OHIO 43140
-------------------------------------------------------------------
                                            SINGLE-STATE OFFENDER
BCI/C344797    FBI/382040MC1
NAME/MOBERLY, JASON CAMERON          DATE OF BIRTH/▉▉▉▉▉▉  SOC/▉▉▉▉▉▉▉
SEX/M  RAC/N

ALSO KNOWN AS                    ALIAS DOBS   ALIAS SOCS    SCAR,MARK,TATTO

-------------------------------------------------------------------
DATE ARRESTED/2006JUN05

ARREST INFORMATION
    ARRESTING AGENCY/FAYETTE CO SO WASHINGTON CRT HOUSE
    ARREST #/40898
    CHARGE 01/DOMESTIC VIOLENCE MISD
    OHIO REVISED CODE/2919.25A
    DISPOSITION/HELD

FINAL COURT DISPOSITION
    AGENCY/WASHINGTON CRT HSE MUNI CRT
    COURT DATE/2006JUL07
    CHARGE/DISORDERLY CONDUCT M4         DISPOSITION/CONVICTED LESSER
    OHIO REVISED CODE/2917.11                         OFFENSE
    PROVISIONS/COURT COST               CONFINEMENT/30D
              COUNSELING,STAY AWAY FROM SENTENCE SUSPENDED/30D
              VICTIM                    PROBATION/1Y
                                        FINE/250

*** NOTE:  THIS IS A SINGLE-STATE OFFENDER
WHERE DISPOSITIONS ARE NOT SHOWN -OR- FURTHER EXPLANATION OF A DISPOSITION
OR CHARGE IS DESIRED, PLEASE CONTACT THE ARRESTING AGENCY.
THIS DATA, BASED ON FINGERPRINT IDENTIFICATION BY BCI, IS ONLY TO BE USED FOR
EMPLOYMENT PURPOSES BY YOUR AGENCY OR AS DEFINED IN THE OHIO REVISED CODE

Moberly

EXHIBIT NO. 1

AMS DEPO

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **JASON MOBERLY** | : | **Case No. 1-08-cv-00569** |
| | : | |
| **Plaintiff,** | : | **Judge Weber** |
| | : | |
| | : | |
| **vs.** | : | |
| | : | |
| | : | |
| **UNIVERSITY OF CINCINNATI,** | : | |
| **et al.** | : | |
| | : | |
| **Defendants.** | : | |

---

### PLAINTIFF JASON MOBERLY'S RESPONSE TO DEFENDANTS'
### FIRST  REQUEST FOR PRODUCTION OF DOCUMENTS

---

### GENERAL OBJECTIONS

1.      The responses to these discovery requests have been made to the best of Plaintiff's knowledge based on information currently known to Plaintiff.  Pursuant to Civ. R. 26(e), Plaintiff reserves the right to produce any subsequently discovered information and/or supplement or modify their answers herein.

2.      Plaintiff objects to the discovery requests insofar as they are vague, ambiguous, overly broad or burdensome, irrelevant and/or not reasonably calculated to lead to the discovery of relevant or admissible evidence.  Plaintiff specifically objects insofar as they seek information that is irrelevant or not reasonably related to incidents, occurrences, time frames or subject matters involving Defendant.

3.      Plaintiff objects to the discovery requests insofar as they seek information that is confidential and protected by the attorney-client privilege or attorney work-



Moberly

**EXHIBIT NO.** 3

**AMS DEPO**

product doctrine, including trial preparation materials. Any information covered by this general objection will not be produced. If documents are to be produced that in part contain information covered by this general objection, where appropriate Plaintiff will produce the documents with the protected information redacted.

4.    Plaintiff objects to the discovery requests insofar as they seek information that is confidential and proprietary business or private information, including, but not limited to, trade secrets, personnel information, financial data, customer information, self-critical analyses or any other highly sensitive information or documentary material.

5.    Plaintiff objects to the discovery requests insofar as they seek personal or private information regarding individuals other than Defendant. This personal or private information is confidential; Plaintiff is not authorized by law or otherwise to disclose such information absent a properly executed release from these individuals.

6.    Plaintiff objects to the discovery requests insofar as they ask Plaintiff to provide information that is not within his possession, custody or control, thereby compelling Plaintiff to speculate when answering.

7.    Plaintiff objects to the discovery requests insofar as they require responses that are neither appropriate nor required under the Federal Rules of Civil Procedure.

8.    Plaintiff's responses to the discovery requests do not concede the relevancy, materiality or admissibility of the information produced. Plaintiff's responses are subject to and without waiver of any objection to the competency, overbreadth, relevancy, materiality, privileged nature or admissibility of the information produced for any other purpose.

9.    In responding to discovery requests, Plaintiff may or may not specifically reference a General Objection. If Plaintiff does not specifically reference a General

2

Objection is answering a particular Requests, the General Objections remain applicable to the Request.

## DOCUMENT REQUEST

1.      Produce all documents that refer to, reflect, comment upon, or tend to prove or disprove any of the contentions in the Complaint or defenses in the Answer.

> **RESPONSE:**  Objection to the extent request seeks materials protected by the attorney client privilege and/or attorney work product doctrine.  Subject to and without waiving said objection, investigation continues, all non-privileged documents that reasonably relate to this litigation are being provided herewith as Bates stamped documents nos. 1-19 (previously provided but included herein) and 20-57.

> Plaintiff reserves the right to supplement this response.

2.      Produce all diaries, journals, appointment books, calendars, notes or any other documents which include a record of any events related to Plaintiff's claims for the period October 15, 2007 to the present.

> **RESPONSE:**  See documents Bates stamped nos. 9-11.

3.      Produce all written statements and/or affidavits relating to any subject matter in Plaintiff's Complaint.

> **RESPONSE:**  See documents Bates stamped nos. 18-19 (Affidavit of John Hurley).

3

4.      Produce all documents that refer to, reflect, or comment upon Plaintiff's employment or participation in any program or activity at Clermont.

**RESPONSE:**   Objection to the extent request is unduly broad, overly burdensome, seeks materials protected by the attorney client privilege and/or work product doctrine, seeks materials not reasonable believed to be in the possession or control or Plaintiff and seeks to elicit materials not related to the issues in this case nor reasonably calculated to lead to the discovery of relevant, admissible information.

Subject to and without waiving said objections, see documents Bates stamped nos. 1-57.

5.      Produce all documents that refer to, reflect, or comment upon Plaintiff's relations and interactions with Ann Appleton, Kimberly Ellison, and James McDonough (collectively, the "Individual Defendants").

**RESPONSE:**   Objection to the extent request is unduly broad, overly burdensome, seeks materials protected by the attorney client privilege and/or work product doctrine and seeks materials not reasonable believed to be in the possession or control or Plaintiff.

Subject to and without waiving said objection, see documents Bates stamped 1-57.

6.      Produce all audio and/or video recordings of conversations by, between, or among any current or former employees of Clermont or the University of Cincinnati, including but not limited to the Individual Defendants, and including any transcripts made of such recordings.

**RESPONSE:**  Plaintiff has no such materials in his possession or control.

4

7.     Produce all documents supporting Plaintiff's claims for damages.

**RESPONSE:**  Objection to the extent Interrogatory is vague and seeks materials protected by the attorney client privilege and or work product.  Subject to and without waiving said objection, investigation is ongoing, see documents Bates stamped nos. 1-57.

Plaintiff reserves the right to seasonably update this response as additional materials are discovered or otherwise become available.

8.     If you answered yes to Interrogatory No. 7, produce all documents that refer to, reflect, or comment upon your physical and emotional health or condition, including but not limited to all correspondence, opinions, and reports from present and prior physicians, healthcare providers, psychologists, psychiatrists, and counselors, including tests, test results, and evaluation reports.

**RESPONSE:**    Plaintiff answered Interrogatory No. 7 in the negative and therefore has no such materials in his possession or control.

9.     Produce all documents sent by you or on your behalf, or received by you or by a representative acting on your behalf, from any state or federal agency charged with investigating employment or related claims, including but not limited to the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission, since October 15, 2007.

**RESPONSE:**  Plaintiff has no such materials in his possession or control.

5

10.     Produce all documents sent by you or on your behalf, or received by you or by a representative acting on your behalf, to the National Association for the Advancement of Colored People ("NAACP") relating in any way to the allegations in your Complaint.

**RESPONSE**:  See materials Bates Stamped nos. 49 and 56-57.

11.     Produce all documents and things that Plaintiff expects to identify as exhibits at the trial of this matter.

**RESPONSE**:  Objection; request is premature.  Plaintiff will seasonably identify all trial exhibits in accordance with the Court's scheduling order.

Respectfully Submitted,

_____
MARC D. MEZIBOV (OH No. 0019316)
SUSAN M. LAWRENCE (OH No. 0082811)
401 East Court Street, Suite 600
Cincinnati, OH 45202
Telephone:  (513) 621-8800
Fax: (513) 621-8833
mmezibov@mezibov.com
slawrence@mezibov.com

Trial Counsel for Plaintiff Jason Moberly

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served via electronic and regular US Mail this 1st day of May, 2009 to Mitchell D. McCrate, Office of the General Counsel, University of Cincinnati, Mail Location 0623, University Pavilion, Suite 650, Cincinnati, OH 45221-0623 and Daniel J. Hoying and Doreen Canton, Taft, Stettinius and Hollister LLP, 425 Walnut St., Suite 1800, Cincinnati, OH 45202-3957.

MARC D. MEZIBOV (OH No. 0019316)

# Jason Moberly
3585 St Rt. 134
Mt. Orab, Ohio 45154
Home Phone (937) 403-8786

## EDUCATION
Southern State Community College, Associate of Applied Business
(Business Management Technology: Computer Programming Major)
Embanet Training Course (awaiting testing for A+ Certification)
White Oak High School

## COMPUTER SKILLS
- Visual Basic, Pascal, and Visual C++ Programming
- Excelled at programming projects assigned by Professor
- Took a leadership role in helping other students complete programming projects
- Windows 95, Windows 98, Windows 2000, Windows XP, Windows ME, Windows NT, MS-DOS
- Web Design and development for private business
- Repair Computer Hardware, Troubleshooting
- Excel Spreadsheets
- PowerPoint
- MS-Mail, MS-Word, Word Perfect
- FrontPage
- Install and Uninstall Software and Hardware including Printers, Scanners, and Digital Cameras
- Maintaining, operating, and troubleshooting V-Tel systems
- Updated Computer Labs, Faculty and Staff PC's
- Efficiently answer phone calls to helpdesk, solve problems over phone or fixing at computer

## WORK HISTORY
*Helpdesk Technician, Siemens Business Services (May 2007 – Present)*
Answer phones
Troubleshoot computer problems from three different companies
All troubleshooting is done over the phone
All companies are world wide

*Head Men's Basketball Coach, Southern State Community College (2002-2006)*
Scheduled practices and games
Prepared our team for practices and upcoming games
Maintained the team budget
Scouted potential players
Recruited top players in five county areas
Actively promoted players to four year colleges
Actively promoted program to community

*Technology Assistant, Southern State Community College (July 2001 – September 2005)*
Install and uninstall software
Clean and repair hardware
Troubleshoot problems with classroom and lab computers
Oversee all computers at Central Campus computer labs
Maintain and operate Distance Learning (V-Tel System)
Help maintain network stability



Moberly

EXHIBIT NO. 4

AMS DEPO

UC/MOBERLY 0005

Close Window



UNIVERSITY OF Cincinnati

# Staff Application

| Requisition Number: | Position Number: | Job Title: | Date: |
|---|---|---|---|
| 272394 | 27UC2394 | Assistant Coach Minor Sports (NE) Mbb | Oct 15 2007 2:42PM |

## Personal Information

| Last Name: | First Name: | Middle Name: | Suffix: | Email Address: |
|---|---|---|---|---|
| Moberly | Jason | | No Response | |

| Address: | City: | State: | Zip Code: | Country: |
|---|---|---|---|---|
| 3585 St. Rt. 134 | Mt. Orab | OH – Ohio | 45154 | No Response |

| Primary Contact Number: | Alternate Contact Number: |
|---|---|
| 937-403-8786 | |

**For purposes of compliance with The Immigration Reform and Control Act, are you legally eligible for employment in the United States?**
Yes

| Are you a previous or current University of Cincinnati employee? | If you are a previous or current University of Cincinnati employee, what is your ID number? |
|---|---|
| No | |

**In case of emergency, who should we notify? (Please include name and phone)**

**Please select your preferred working site(s):**

University of Cincinnati West Campus                    Clermont College Branch Campus (Batavia, Ohio)
University Medical Schools (Colleges of Medicine, Nursing   X   College of Applied Science (2220 Victory Parkway)
and Pharmacy)
Raymond Walters Branch Campus (Blue Ash, 9555
Plainfield Road)

## Voluntary Demographic Data

| Are you disabled? | Are you a veteran of the Vietnam era? | Are you a veteran (other than Vietnam era)? | Are you a disabled veteran? |
|---|---|---|---|
| | | | |

## Education

| Did you graduate from High School or receive a GED? | If no, list the highest grade you completed: |
|---|---|
| Yes | |

**List any certificates received:**

| Name of School: | Major (if applicable): | Degree (if applicable): | Number of Years Completed: | Did you graduate? | Date Completed: |
|---|---|---|---|---|---|
| Southern State Community College Hillsboro, OH | Computer Programming | Associates Degree | 3 | Yes | 05-2001 |
| | | | | No Response | |
| | | | | No Response | |

*Moberly*
**EXHIBIT NO. 5**
AMS DEPO

## Applicant Information

|  |  |  |  | No Response |  |
|  |  |  |  | No Response |  |

## Work Experience

| Employer Name: Siemens IT Solutions | Job Title: Help Desk | Type of Employment: Full-Time | Dates Employed: From: 03-2007 To: | Starting Salary: 14.00 | Most Recent/Ending Salary: 14.00 |
|---|---|---|---|---|---|
| Supervisor Name: Ken Rosenbalm | Supervisor Number: | May we contact this employer? Yes | | Reason for Leaving: Not leaving | |
| Work Performed: Answer phones and troubleshoot computer problems for different accounts. | | | | | |

| Employer Name: Southern State Community College | Job Title: Head Men's Basketball Coach | Type of Employment: Part-Time | Dates Employed: From: 01-2002 To:    03-2006 | Starting Salary: 4500.00 | Most Recent/Ending Salary: 4500.00 |
|---|---|---|---|---|---|
| Supervisor Name: Nicole Roades | Supervisor Number: 1-800-628-7722 | May we contact this employer? Yes | | Reason for Leaving: Non renewed by Athletic Director | |
| Work Performed: Recruited players in five county area, maintained team budget, scheduled practices and games, responsible for 15 players | | | | | |

## Additional Experience Section

This box to explain any prolonged periods of unemployment or to list any additional work experience not listed above:

## Conviction Information

Have you ever been convicted of a local, state or federal offense? Note: A conviction may or may not result in confinement.
No

## Conviction History

| Date of Conviction: | Address at time of Conviction: | Charge: | Penalty Assessed: | List your Probation/Parole Officer: |
|---|---|---|---|---|
|  | No Response |  |  |  |
|  | No Response |  |  |  |
|  | No Response |  |  |  |
|  | No Response |  |  |  |
|  | No Response |  |  |  |

## Supplemental Questions

What prompted you to apply to the University of Cincinnati?
lied on my own

se specify from above (if applicable):

UC/MOBERLY 0002

Applicant Information                                                                                    Page 3 of 3

### Agreement

The University of Cincinnati is a drug-free workplace. Individuals offered employment at The University of Cincinnati may be required to successfully complete a pre-employment physical which includes drug testing. Individuals who refuse to take or who fail the drug test after being informed, will be removed from employment consideration. A) I understand that any intentional or unintentional misrepresentation of fact in this application will be cause for dismissal, cancellation of offer, and/or negotiation of any additional employment considerations or agreements. I hereby authorize the University of Cincinnati to investigate these statements without liability arising therefrom. By my agreement of this statement I authorize any city, county, state, or federal law enforcement agency or court related thereto to release information they possess concerning me or any prior arrest which resulted in conviction. B) I also agree to abide by the University's Smoke Free Workplace rules as established. C) I also realize that my employment is dependent upon the successful completion of a physical examination and attendance at orientation for new employees.

BY SIGNING BELOW, I certify that I have read and agree with these statements.

**Jason Moberly**

| | | |
|---|---|---|
| Applicant's Name | Applicant's Signature | Date |

### Test Scores

Close Window

UC/MOBERLY  0003

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

08 AUG 22  PM 12: 33

**JASON MOBERLY**
**3585 State Route 134**
**Mount Orab, OH 45154**

     **Plaintiff,**

**vs.**

**THE UNIVERSITY OF CINCINNATI**
**CLERMONT COLLEGE**
**4200 Clermont College Drive**
**Batavia, OH 45103**

**and**

**ANN APPLETON**
**Individually**
**4200 Clermont College Drive**
**Batavia, OH 45103**

**and**

**KIMBERLY ELLISON**
**Individually**
**4200 Clermont College Drive**
**Batavia, OH 45103**

**and**

**JAMES MCDONOUGH**
**Individually**
**4200 Clermont College Drive**
**Batavia, OH 45103**

     **Defendants.**

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No.  **1:08 C V 569**

Judge:  *WEBER, H. D.*

**COMPLAINT AND JURY**
**DEMAND**

*Moberly*
**EXHIBIT NO.** *6*
AMS DEPO

1

## COMPLAINT AND JURY DEMAND

Plaintiff Jason Moberly, by and through counsel, for his Complaint against Defendants states as follows:

### I. PRELIMINARY STATEMENT

1.    This is a civil rights action alleging that Defendants discriminated against Plaintiff, the former Assistant Basketball Coach for the University of Cincinnati Clermont College, as a direct result of his protest against what he perceived was the College's discriminatory treatment of protected racial minorities.  Specifically, Plaintiff alleges that subsequent to his advocacy on behalf of the basketball team's minority players, Defendants retaliated against Plaintiff by rejecting his application for reappointment to the assistant coaching position.

2.    Plaintiff seeks relief including reinstatement to his position as Assistant Basketball Coach, punitive damages, costs and reasonable attorney fees.

### II. JURISDICTION

3.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(3)-(4) and 28 U.S.C. § 1367.  Federal jurisdiction is appropriate in this instance to secure protection and to redress deprivations of rights conferred by:  (1) 42 U.S.C. § 1981, which forbids intentional discrimination based upon race in the formation, performance, modification, and termination of contracts; (2) 42 U.S.C. § 1983, which provides remedies for violations of guarantees of free speech on matters of public concern under the First Amendment of the United States Constitution and which

2

provides remedies for violations of equal protection of the laws under the Fourteenth Amendment of the United States Constitution; and (3) Title VI of the Civil Rights Act of 1964, which prohibits programs that receive federal funding from excluding, denying benefits, or subjecting individuals to discrimination on the ground of race, color, or national origin.

4.     Venue with this Court is appropriate because the actions out of which these claims arose occurred within the Southern District of Ohio.

## III. PARTIES

5.     Plaintiff Jason Moberly is a United States citizen who resides in Highland County, Ohio.  Plaintiff was employed as the Assistant Coach of the men's basketball team at UC Clermont during the 2007-2008 school year.

6.     Defendant UC Clermont is a public institution of higher education in the state of Ohio and a recipient of federal funding.  The University is named herein as a party with respect to Plaintiff's claim for injunctive relief and damages under Title VI.

7.     Defendant Ann Appleton is a United States citizen and served as the Assistant Dean of Student Services at UC Clermont at all times relevant to the events set forth in this complaint.

8.     Defendant Kimberly Ellison is a United States citizen and served as Director of Student Life at UC Clermont at all times relevant to the events set forth in this Complaint.

9.     Defendant James McDonough is a United States citizen and served as Dean of UC Clermont at all times relevant to the events set forth in this Complaint.

## IV. STATEMENT OF THE CASE

10.     In the summer of 2007, UC Clermont hired Plaintiff to serve as its

3

Assistant Men's Basketball coach during the following school year. Plaintiff's previous collegiate basketball coaching experience included three years as the assistant women's coach at Southern State Community College and four years as the men's head coach at the same institution.

11.     During the term of his employment with UC Clermont, Plaintiff became concerned that African American basketball players frequently encountered difficulties in their interactions with UC Clermont's administration and in utilizing general student services. Plaintiff perceived that these players and other African American students were being subjected to unfair and/or discriminatory treatment.

12.     After Plaintiff's first season with the team UC Clermont required him to reapply for the position in order to coach the following year. As part of the application process Plaintiff interviewed with Head Coach John Hurley, Athletic Director Brian Sullivan and Director of Student Life Kimberly Ellison. Following the interview, Plaintiff was informed that the vote had been unanimous in favor of re-hiring Plaintiff to coach another year.

13.     Believing that he would continue to be a member of the coaching staff at UC Clermont, Plaintiff wanted the University to address his concerns that its minority basketball players were being denied access to the University services to which all students were entitled. Consequently, shortly after his interview Plaintiff placed a phone call to Karen Faaborg, Vice Provost of the University of Cincinnati. During this telephone call Plaintiff detailed the difficulties he had witnessed African American basketball players encounter during the past year and also disclosed that he had reapplied for the assistant coaching position. Ms. Faaborg directed Plaintiff to communicate with George Wharton, the Director of Human Resources/Equal

4

Opportunity. Plaintiff contacted Mr. Wharton and provided him with his thoughts and observations.

14.     Subsequent to this conversation with the Vice-Provost and Mr. Wharton, Plaintiff was informed by Athletic Director Brian Sullivan that he had overheard Ms. Ellison conducting a conversation via speakerphone in which she stated that Plaintiff would not be recommended for the assistant coaching position because he had contacted the main campus regarding racial discrimination at UC Clermont. Shortly thereafter Mr. Hurley confirmed that the position would be offered to another applicant despite the fact that both he and Mr. Sullivan continued to support Plaintiff for the assistant coaching position.

15.     On June 25, 2008, Plaintiff met with Dean McDonough to learn more about the status of his appointment. Dean McDonough informed him that he was not aware of any recommendation naming Plaintiff for the assistant coaching position.

16.     On July 1, 2008, Plaintiff was informed by Coach Hurley that he did not receive the assistant coaching position. Coach Hurley told Plaintiff that his application had been rejected in favor of an applicant whom the coach felt had objectively inferior qualifications and had no experience coaching men's basketball.

17.     Because he was concerned that his application had been rejected for impermissible reasons, Plaintiff retained legal counsel to represent him in connection with the matter. On or about August 6, 2008, Plaintiff, through his counsel, sent a letter to the University's Office of General Counsel apprising UC of his potential claims. The letter specifically requested the University respond to Plaintiff's concern by August 18, 2008.

18.     On August 21, 2008--the eve of the filing of this Complaint--Plaintiff

5

received a phone call from representatives of the University. That conversation led to further conversation between Plaintiff and the Assistant Dean of Student Services, Ann Appleton. Ms. Appleton informed Plaintiff that he could have his job back. Plaintiff replied that he was still interested in the job, but wanted an opportunity to discuss the entire matter with his attorney. In response, Ms. Appleton said, "Well, you probably won't be offered the job then."

## V. STATEMENT OF CLAIMS

### COUNT I

19.   Plaintiff reiterates and incorporates by reference paragraphs one through eighteen.

20.   Defendants' conduct constituted a violation of Plaintiff's right to be free from discrimination and retaliation as provided by 42 U.S.C. §1981 on account of his association with and advocacy for protected minorities in the making and enforcing of contracts.

### COUNT II

21.   Plaintiff reiterates and incorporates by reference paragraphs one through twenty.

22.   Defendants' conduct under color of state law constituted a violation of Plaintiff's rights to be free from retaliation in public employment for the exercise of protected speech on matters of public concern under the First Amendment to the United States Constitution as secured by 42 U.S.C. §1983.

### COUNT III

23.   Plaintiff reiterates and incorporates by reference Paragraphs one through

6

twenty-two.

24.    Defendants' conduct constituted discrimination by a program or activity receiving federal assistance in violation of Title VI., 42 U.S.C. § 2000(d) *et seq.*

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jason Moberly demands judgment against Defendants UC Clermont, Ann Appleton, Kimberly Ellison and James McDonough, jointly and severally, as follows:

1.    For an order directing Defendants to reinstate Plaintiff to the position of assistant basketball coach and/or an award of front pay;

2.    For an award of punitive damages in an amount consistent with the law and the evidence at trial, an award of compensatory damages for injury to Plaintiff's reputation and emotional pain and suffering, and an award of punitive damages against the individual defendants in an amount to be determined at trial;

3.    For an award of Plaintiff's costs and reasonable attorney fees; and

4.    For an award of such other relief in law and equity to which Plaintiff is entitled under the premises.

Respectfully submitted,

LAW OFFICE OF MARC MEZIBOV

MARC D. MEZIBOV (OH No. 0019316)
SUSAN M. LAWRENCE (OH No. 0082811)
401 East Court Street, Suite 600
Cincinnati, OH 45202

Telephone: (513) 621-8800
Fax: (513) 621-8833
mmezibov@mezibov.com
slawrence@mezibov.com

Trial Counsel for Plaintiff Jason Moberly

## JURY DEMAND

Plaintiff hereby demands that all issues of fact in the foregoing complaint be tried by a jury.

MARC D. MEZIBOV (Ohio Bar No. 0019316)

8

2

From: j_moberly@hotmail.com
To: faaborkk@ucmail.uc.edu
Subject: RE: Clermont Investigation
Date: Mon, 23 Jun 2008 15:10:01 -0400

Thank you.

Jason

---

Subject: FW: Clermont Investigation
Date: Mon, 23 Jun 2008 14:46:26 -0400
From: FAABORKK@UCMALL.UC.EDU
To: j_moberly@hotmail.com

Jason,
George awaits your call.
K.

Karen Faaborg
Vice Provost for Academic Personnel
240 Van Wormer Hall
University of Cincinnati
Cincinnati, OH 45221-0631
Phone (513) 556-1146; Fax (513) 556-7861

**From:** Wharton, George (whartog)
**Sent:** Monday, June 23, 2008 2:44 PM
**To:** Faaborg, Karen (faaborkk)
**Subject:** RE: Clermont Investigation

Thanks Karen I'll be around to answer his call.

George Wharton, Director Office of Equal Opportunity
University of Cincinnati
Suite 250, University Hall
51 Goodman Drive
Cincinnati, Ohio 45221-0214
513-556-5508

**From:** Faaborg, Karen (faaborkk)
**Sent:** Monday, June 23, 2008 2:33 PM
**To:** Wharton, George (whartog)
**Cc:** 'j_moberly@hotmail.com'
**Subject:** Clermont Investigation

Moberly
EXHIBIT NO. 7
AMS DEPO

Dear George,
Jason Moberly at Clermont has contacted me again about the charge of discrimination he is making and I have urged him to contact you directly. I am copying him on this email. He said he would try to call you around 4:00 today.
Thanks,
Karen

*Karen Faaborg*
*Vice Provost for Academic Personnel*
*240 Van Wormer Hall*
*University of Cincinnati*
*Cincinnati, OH 45221-0631*
*Phone (513) 556-1146; Fax (513) 556-7861*

---

The other season of giving begins 6/24/08. Check out the i'm Talkathon. Check it out!

Get more out of the Web. Learn 10 hidden secrets of Windows Live. Learn Now

If this email is spam, report it here:
http://www.OnlyMyEmail.com/ReportSpam

9/9/2008



WASHINGTON DC AREA • JULY 29-31
RICH DAD'S EDUCATION    LEARN TO BE RICH™ FREE TRAINING
Click to learn more



Windows Live™    Home    **Hotmail**    Spaces    OneCare    MSN                    j_moberly@hotmail.com
Sign out

Inbox
Junk
Drafts
Sent
**Deleted (10)**
School Emails
Manage folders

Today
Mail
Contacts
Calendar

New    Reply    Reply all    Forward    Delete    Junk        Move to •        Options ⚙

### FW: Letter regarding Clermont College.

From:    **Wharton, George (whartog)** (WHARTOG@UCMAIL.UC.EDU)
Sent:    Thu 7/03/08 10:17 AM
To:      McDonough, James (mcdonojf) (mcdonojf@email.uc.edu); Hurley, John (hurleyje) (hurleyje@UCMAIL.UC.EDU)
Cc:      Jason Moberly (j_moberly@hotmail.com)
📎 Letter to...doc (20.4 KB), Clermont.doc (26.9 KB)        Security scan upon download   🛡 TREND

This letter is notice that Jason Moberly has filed a complaint of discrimination against Clermont College with our office. The complaint alleges he was retaliated against and not hired because he spoke out against racial problems at the college. A copy of Mr. Moberly's complaint is attached. Jim I will contact you next week to begin the investigation.

George Wharton, Director Office of Equal Opportunity

University of Cincinnati

Suite 250, University Hall

51 Goodman Drive

Cincinnati, Ohio 45221-0214

513-556-5508

**From:** Jason Moberly [mailto:j_moberly@hotmail.com]
**Sent:** Wednesday, July 02, 2008 12:12 PM
**To:** Wharton, George (whartog)
**Subject:** Letter regarding Clermont College.

Attached is the letter you requested.
Also I've attached the document that I went over with the Dean.

Jason Moberly
937-763-7396

The i'm Talkaton. Can 30-days of conversation change the world? Find out now.

Have a fast connection and want more features? Try the full version to see message previews in your inbox. (It's free, too.)

© 2008 Microsoft | Privacy | Legal                                    Help Central | Account | Feedback



Moberly
EXHIBIT NO. 8
AMS DEPO

Dear Mr. Wharton,

I am writing in regards to my position as Assistant Basketball Coach at UC Clermont. I served as assistant coach last season and was under the impression that I would retain my position. I've been in constant contact with current players, new players, and Coach Hurley. Coach Hurley has expressed to me that he would like for me to continue coaching under him next season.

About four weeks ago I had to interview for the position as assistant basketball coach. I interviewed with three people, Brian Sullivan (Athletic Director), Coach John Hurley (Men's Basketball Head Coach), and Kim Ellison (Director of Student Life).

I met and exceeded all of the qualifications for the position. Previously, I have been an assistant women's coach for three years at Southern State Community College. After that, I was hired to be the men's head coach at Southern State Community College. I was the Head Coach for four years. After my time at Southern State I came to UC Clermont to work under Coach Hurley.

After my interview I contacted Karen Faaborg regarding the way that African American students were being treated by the Student Services area. Upon research I found out that it is classified as Institutional Racism. Ms. Faaborg contacted Dean McDonough at Clermont. Mr. McDonough was on vacation at the time and I let Ms. Faaborg know that I was concerned about my position at the college. Dean McDonough assured her that no one would lose their job because of the allegations that were brought on. After the phone call was made, I spoke with Coach Hurley and he told me that the position was going to be offered to another applicant. Brian Sullivan (Athletic Director) stated that he heard Kim Ellison (Director Student Life) say over speakerphone that I wasn't going to be recommended due to the fact that I contacted the main campus regarding the racial problems at the college. John Hurley (Head Coach) was told by Kim Ellison that she contacted the other applicant and found more information regarding his resume after the interview was processed. I was not called by Kim Ellison to ask if I forgot anything regarding my resume. In both process performed by Kim Ellison, I feel that the law was broken due to retaliation and by not giving equal opportunity to all applicants.

I met with Dean McDonough on June 25th regarding my employment and he wasn't aware of the situation. Ann Appleton said that the Dean had signed off on the recommendation but at the time, Dean McDonough was still on vacation. He told me he didn't see anything like that and didn't sign off on anything.

7

Maberly

EXHIBIT NO. 9

AMS DEPO

I believe that I was not offered the job even though at first it was a unanimous vote and then a 2-1 vote for me to be hired, because I did call the main campus. I believe that it was in their best interest to get me away from the students there at the college because I was there spokesman. They wanted me off campus so I didn't have any contact with the students. It was brought to my attention that Ann Appleton wanted to decide in court the outcome of this situation. Coach Hurly informed me of this Tuesday night July 1st at open gym.

# *Last year*

1. Black assistant coach goes to student services to check on the grades and progress for the African American students. He gets banned from the student services area.

2. Player plays all winter and at the end of the season they say he wasn't eligible. Then it was because hi financial aid wasn't paid. Even though the Professors signed him into class and he attended class. The kid had to miss the National Tournament because no attempt was made to get financial aid through. Why was it discovered then and not earlier in the quarter? Believe it or not, when we return, his financial aide was found. How convienent.

3. Academic requirements were changed in the middle of the year. According to the ORCC & USCAA all of our players were eligible. Student Services tried to do the same thing to Spring Sports and parents came and complained, they could continue to play after that.

4. S█████ D█████ scores over 2000 pts in four years. He is #1 in points, #1 in assists, #3 in steals in school history. Played in the National Tournament three straight years. He was an All American for three years, Tournament MVP of every tournament he ever played in. He was a unanimous vote this year at the National Tournament for Player of the Year. He was MVP of the National Tournament and was on a National Championship team. Now S█████ is playing Professional basketball for the Kentucky Thunder. It's something that should be displayed as a success story for this college. It's not a success story because S█████ also faced racial discrimination here at the college. His number is not going to be retired because he is not a quality student. S█████ was involved in student organizations all four years of college. He is a black male that graduated from UC. He is not a quality individual. S█████ watches other students kids while they take evening classes. I have witnessed S█████ help a little girl read, teach a boy to play basketball, but most of all, he was a friend to these kids. Then Student Services says that it's up to the Main Campus to retire S█████ number. Main Campus says it's not up to them but with the accomplishments that he has, it should be. S█████ has his concerns that I'm not aware of but his brother does who works at the Better Business Bureau.

5. My position is not only to be a basketball coach. These players confide in me with problems that they have in school and in life. Some of these kids have told me they wait in Student Services for help and it's like the are invisible. White student walks in afterwards and they are helped. Kids don't want to go back over there.

6. We have a student who has a learning disability. This student goes to the disabilities area for help and he is imeadiately reffered to the learning Center. He goes back and asks for help and no one helps him. He's said that he's told to go to the Learning Center for help. This kid was told to go to the Disabilities Center

9

m█ bec█
EXHIBIT NO. 10
AMS DEPO

because of the Learning Disability that he has. Another black male that is not getting the help he is deserved by law.

7. It was also overheard by someone that works at the college, that some of the ladies in Student Services called the basketball team stupid, dumb, worthless, and went to even call S████ D████ nothing but black trash.

8. It was even brought to the attention of one of the players that some in the Student Services area treated whites different then blacks. This coming from an employee that works at the college.

# *This year*

1. After witnessing everything for a year and seeing other peoples failed attempts to try and get this taken care of, I took matters into my own hands.

2. After holding the assistant basketball position, I for some reason had to apply for the job with other candidates. I met all of the qualifications and even exceeded them. I had to interview with Coach Hurley, Brian Sullivan, and Kim from Student Services. I was a unanimous vote to be hired.

3. I called Karen Faaborg at UC. I let her know all the problems that I was aware of. She said that she called the Dean and spoke with him. I told her that I applied for the job and was afraid that I wouldn't get it now. She told me that the Dean assured her that no one would lose their job over this. Sure enough, I did.

4. Kim managed to be on a call on speaker phone and mention that I was not going to be recommended because I called the main campus. Retaliation is against the law. This was overheard by an employee at the college. The reason it is retaliation is because the girls coach sent a letter stating problems with the Student Services last year and nothing was done to him.

5. We have been contacted by Withrow, and Woodward High Schools stating that they will not send a player to Clermont because of the way the black students are treated.

6. We also had a local kid that when asked about coming to Clermont to get an education and to play basketball his father said there was no way that was going to happen due to the racism that is at Clermont. When asked what he was talking about, he brought up the student that wasn't allowed to participate in the National Tournament.

7. During my interview, one of the questions that was asked by Kim was if I would recruit in Brown and Clermont County. Anyone that knew the basketball team would know that we had 2 players from Brown County and 2 players from Clermont County. The kids from Clermont quit. During the summer we had 2 kids from Hillsboro, 5 kids from Brown County, 4 from Clermont County. Schools were Ripley, Fayetteville, Georgetown, and Western Brown. Clermont Northeastern, Amelia, Felicity, and Bethel. Why was that question brought up? 98% of the population in those counties are white. On the website, Clermont serves Brown, Clermont, Hamilton, Warren, plus they are an open enrollment college. With more African Americans moving towards Clermont County, how will UC Clermont be effected?

8. We have students majoring in Engineering, Chemical and Mechanical, Education, Accounting, Bussiness, and others that change day to day. We have a student coming from St. Edwards, Clark Montessori, Holmes, and transfers from two year colleges. Those high schools have high academic standards. The transfers we have were checked into during the season and they are good students as well.

9. One thing regarding transfer students is that they must pass 24 credit hours and have a GPA of 2.0 to be eligible. Not a bad idea, but letting us know in the middle of recruiting and already having kids come in, looks bad on the college.

10. At the banquet after the mens and womens basketball teams both come back from the National Tournament, those players received a slap in the face when they were told that more concentration was going to be on intramurals. Try running intramurals with no students living on campus. Can not be done, I tried it at SSCC.

11. Right now students are talking and it's getting in the community. This can be stopped and it needs to be stopped. Students are the most important part of a college. The colleges finances are brought in by the students. We will lose students of all races if this problem is not fixed.

11

From: j_moberly@hotmail.com
To: jim.mcdonough@uc.edu
Subject:
Date: Wed, 25 Jun 2008 07:34:33 -0400

Mr. McDonough,

My name is Jason Moberly. I would like to meet with you regarding the assistant coaching position for the mens basketball team at Clermont. Last year I was the assistant and this year I was not given the position even though I hold 8 years of college experience including being a head coach at the college level for four years. There are other matters that I think we should discuss when you have time.

I hope to hear back from you so we can discuss some situations at Clermont and make it a great place for students to go.

Jason Moberly
937.763.7396

The other season of giving begins 6/24/08. Check out the i'm Talkathon. Check it out!

Get more out of the Web. Learn 10 hidden secrets of Windows Live. Learn Now

If this email is spam, report it here:
http://www.OnlyMyEmail.com/ReportSpam

Moberly
EXHIBIT NO. 11
AMS DEPO

> Date: Fri, 27 Jun 2008 14:03:21 -0400
> To: j_moberly@hotmail.com
> From: mcdonojf@email.uc.edu
> Subject: Re: Regarding our meeting
>
>
> Jason, Thank you for the follow up note. I will be out of town during
> the next week and will begin to look into the issues you raised in
> the following week.
>
> Jim
>
>
> At 12:52 PM 6/27/2008, you wrote:
> >Mr. Mcdonough,
> >
> >I would like to thank you again for taking the time out to discuss
> >my situation and the situation regarding our African American
> >student athletes.
> >
> >I would like to let you know that I spoke to a spokesman for the
> >NAACP and let them know that we had a good meeting and I believe
> >that actions will be taken from our conversation. However, they are
> >still a phone call away if we need to have them help us.
> >I would also like to know how my coaching position is coming because
> >I can either move on to another college or I can get in touch again
> >with Mr. Wharton at the main campus, and my lawyer to see what other
> >actions need to be done.
> >
> >Also, we talked about the great opportunity that you are giving the
> >students from Cincinnati by giving them a cheap place to get a
> >college education. I'd like you to know that there was also an
> >article in Sports Illustrated stating that inner city kids have one
> >avenue to a college education and that is athletics. It talks about
> >gang activity and murder that these kids face. Like I said in our
> >meeting, you can make a difference in the life of many kids from Cincinnati.
> >
> >There is also one more thing that I would like to add about the
> >racial tension at Clermont. Here is an article that I found on the
> >internet and it believes that this is the problem we have at Clermont.
> >
> >What is Institutional Racism?
> >
> >
> >Institutional racism is a form of racism which is structured into

Moberly
EXHIBIT NO. 12
AMS DEPO

5

> >political and social institutions. It occurs when institutions,
> >including corporations, governments and universities, discriminate
> >either deliberately or indirectly, against certain groups of people
> >to limit their rights. Race-based discrimination in housing,
> >education, employment and health for example are forms of
> >institutional racism. It reflects the cultural assumptions of the
> >dominant group, so that the practices of that group are seen as the
> >norm to which other cultural practices should conform (Anderson and
> >Taylor, 2006). Institutional racism is more subtle, less visible,
> >and less identifiable than individual acts of racism, but no less
> >destructive to human life and human dignity. The people who manage
> >our institutions may not be racists as individuals, but they may
> >well discriminate as part of simply carrying out their job, often
> >without being aware that their role in an institution is
> >contributing to a discriminatory outcome. This not only threatens
> >the efforts to improve health care for all Americans, but it also
> >creates problems for a society that continues to struggle with a
> >legacy of racial discrimination and oppression (Copeland, 2005).
> >Although institutional racism may not necessarily be caused by
> >intentional racism, it does however have very serious consequences
> >for people of color in the United States especially in the health care system.
> >
> >
> >
> >I know that you have a college to administer and I see good things
> >going on there. Everyone wants to have a good legacy and be
> >remembered as an individual who made a difference. I believe you can
> >go down in history as the Dean who stopped racism on campus or the
> >Dean that let it get out of hand and ruin a college's reputation.
> >
> >
> >
> >I hope you have an enjoyable weekend and I look forward to hearing
> >back from you.
> >
> >
> >
> >Jason Moberly
> >
> >
> >
> >
> >----------
> >Need to know now? Get instant answers with Windows Live Messenger.
> ><http://www.windowslive.com/messenger/connect_your_way.html?
ocid=TXT_TAGLM_WL_Refresh_messenger_062008>IM
> >on your terms.
>

---

See how Windows Mobile brings your life together—at home, work, or on the go. See Now

If this email is spam, report it here:
http://www.OnlyMyEmail.com/ReportSpam

September 11, 2008

TO:      Jason Moberly

FROM:    George Wharton

RE:      Determination: Complaint Alleging Retaliation

The following determination summarizes the finding of the Office of Equal Opportunity regarding your charge dated July 3, 2008 concerning retaliation in violation of University policy. Your complaint alleged you were not hired for the Assistant Men's Basketball coach position because you complained of discriminatory treatment of African American students in a conversation with Karen Faaborg, Vice Provost for Academic Personnel. Our investigation confirmed you called Karen Faaborg and on June 16, 2008 you contacted Brian Sullivan, Athletic Director, Clermont College concerning that call. Your complaint further alleged that the search committee was unanimous you were the first choice but later split 2 to 1 for your hire. After reviewing the information obtained in the investigation and the fact that you were recently offered the position of Assistant Men's Basketball coach, I find insufficient evidence to support your claim of retaliation.

Our investigation confirmed that you worked part-time as the Assistant Men's Basketball coach during the academic year '07-'08. You were informed you would have to apply for the position, which would be advertised and a full recruitment conducted. You applied for the position of Assistant Men's Basketball coach and on June 4, 2008 you were interviewed for the position at Clermont College. The search committee charged to interview candidates for the position consisted of Head Coach John Hurley, Brian Sullivan, Athletic Director, and Kim Ellison, Director Student Life. Two other candidates were interviewed for the Assistant Men's Basketball coach position: Keith Starks and Melvin Levitt. Melvin Levitt later informed Kim Ellison that he was not interested in the position.

According to our investigation, on June 9, 2008 Coach John Hurley, Kim Ellison and Brian Sullivan discussed the candidates for the Assistant coach position. At that meeting Coach Hurley ranked you his first choice but Kim Ellison and Brian Sullivan indicated they favored Keith Starks as their first choice. However, both Kim and Brian indicated they deferred to Coach Hurley due to his capacity as Head Coach. On June 12, 2008 as part of the hire process, Ms. Ellison began preparing a summary on the qualifications of both candidates. Ms. Ellison indicated she wanted to make sure she had all the information about Keith Starks' employment history and credentials because he was a strong candidate. Ms. Ellison indicated she had completed your employment information.

Moberly

EXHIBIT NO. 13

AMS DEPO

On June 17, 2008 she obtained approval from Ann Appleton, Interim Dean of Enrollment and Student Services to contact Keith Starks. During the discussion, Ms. Ellison indicated she learned Keith Starks had played professional basketball for the Boston Celtics and the European basketball league for a number of years but had not disclosed that information on his application or in the interview. On that same date she discussed the additional information related to Keith Starks' qualifications with Brian Sullivan and both agreed Keith Starks would be the candidate of choice. On June 19, 2008 Ms. Ellison met with Ann Appleton and recommended that Keith Starks be offered the position of Assistant Men's Basketball coach based on his overall qualifications, including his college degree and experience as a professional basketball player. On June 23, 2008 Ann Appleton discussed the candidates with Dean McDonough and he approved the hire of Keith Starks. Later on June 23, 2008 Kim Ellison and Brian Sullivan called Keith Starks and he accepted the offer contingent on approval.

Later on June 23, Kim Ellison and Brian Sullivan called Coach Hurley to inform him that Keith Starks had been offered the coaching position based on his overall qualifications. During the conversation with Coach Hurley, Kim Ellison expressed concern whether Jason Moberly was truly interested in the position because he had made allegations about discrimination against African American students but he had not shared that information with the appropriate personnel at Clermont College. Brian Sullivan who participated in the conversation denied he heard Kim Ellison state that Jason Moberly did not get the job because he contacted Karen Faaborg regarding the allegations of discrimination against African American students. Both Kim and Brian stated they concluded Keith Starks was the better candidate because of the added experience as a professional basketball player.

To confirm the appointment, Ann Appleton sent a second letter to Keith Starks requesting his response to the offer of Assistant Men's Basketball coach. After several unsuccessful phone calls to confirm Keith Starks' acceptance of the position, the offer was rescinded. The result is that the employment process to fill the Assistant Men's Basketball coach position was not completed and Keith Starks was not hired for the position.

Last week I received information that the Assistant Men's Basketball coach position was offered to you. As of this date I am not aware that you have accepted the position. Based on my investigation, I find insufficient evidence to support your claim of retaliation in the hiring process due to your phone call to Karen Faaborg alleging discriminatory treatment against African American students. This concludes my investigation on your claim of retaliation.

Jason I recall, prior to filing your complaint, you made statements to me that there was discrimination against African American students. When I asked you for contact information you declined and indicated the students would not come speak to me because they feared retaliation. Let me assure you the students will not suffer retaliation for filing a complaint. That said I want to again encourage you to provide me contact information so that I can investigate any students claims of harassment or discrimination.

cc: James McDonough, Dean Clermont College



UNIVERSITY OF
# Cincinnati

Clermont College
4200 Clermont College Drive
Batavia OH 45103-1785

Phone   (513) 732-5200
        (866) 446-2822
Web     www.ucclermont.edu

October 3, 2008

Jason Moberly
3585 St. Rt. 134
Mt. Orab, OH 45154

Dear Mr. Moberly:

I am pleased to make a contingent offer of employment to you for the position of Assistant Coach - Men's Basketball, at an annual salary of $2,200, starting October 19, 2008.

The basketball season begins in October and runs through February (approximately 16 hours per week for 20 weeks). This appointment also takes into consideration the time that is spent recruiting students during the off-season (approximately 25 hours total).

Prerequisites to your employment involve a successful criminal records check and completion of the *Declaration Regarding Material Assistance/Non Assistance to a Terrorist Organization* form.

As a provision of Senate Bill 9, Ohio's Homeland Security and Anti-Terrorism legislation, all applicants under final consideration for employment with a State employer must complete and return in its entirety, *the Declaration Regarding Material Assistance to a Terrorist Organization* form prior to becoming employed. An answer of "yes" to any question or failure to answer "no" to any question shall constitute a positive response and employment will be denied.

You may review additional information regarding the DMA process by visiting the Ohio Homeland Security website at www.homelandsecurity.ohio.gov/dma.asp. A DMS form and Terrorist Exclusion List are attached with this letter for your convenience. Please complete and return this form to me as soon as possible.

Your employment is also contingent upon the results of a fingerprint criminal records check. Please visit the University's Public Safety office at least one week before your scheduled employment start date to complete the records check. Information regarding this process is also enclosed.

Moberly

EXHIBIT NO. 14

AMS DEPO

*An affirmative action/equal opportunity institution*

UC/MOBERLY 0006

Your employment is also contingent upon the results of a fingerprint criminal records check. Please visit the University's Public Safety office at least one week before your scheduled employment start date to complete the records check. Information regarding this process is also enclosed.

This position is in the unclassified civil service. Accordingly, you are entitled to receive the benefits afforded by the University to unclassified employees and agree to accept those benefits. You understand that all unclassified employees of the University of Cincinnati serve at-will, that is, at the pleasure of the Board of Trustees. You also understand and acknowledge that, as an at-will employee, both you and the University remain free to end your employment for any reason or for no reason at all.

If you have any preliminary questions concerning employment at the University of Cincinnati, please feel free to contact me at (513) 732-8964. You may signify your acceptance of the offer by signing below.

I look forward to working with you.

Sincerely yours,

Ann G. Appleton
Interim Assistant Dean
Enrollment and Student Services


_____ *I accept the offer of the position of Assistant Coach- Men's Basketball as stated above.*

_____ *I do not accept the offer of the position of Assistant Coach- Men's Basketball as stated above.*

Signature

Date



**Clermont College**
4200 Clermont College Drive
Batavia, OH 45103-1785

Phone   (513) 732-5200
        (866) 446-2822
Web     www.ucclermont.edu

October 20, 2008

*Certified Mail, Receipt Requested*

Jason Moberly

3585 St. Rt. 134

Mt. Orab, OH 45154

Dear Jason:

In the letter of employment that you signed on October 3, 2008, you agreed to go to UC's Public Safety Office for fingerprinting and a criminal records check at least one week before your scheduled start date which was to be October 19th. So far, you have not accomplished this and your employment is contingent upon being cleared by that office.

Therefore, I'm sending this follow up to inform you, as we've stated before, that we wish to hire you and would like to finish up the process so we can get you onto our payroll as a UC Clermont employee as the Assistant Men's Basketball Coach.

However, we can only give you until October 29th to go to UC's Public Safety Office per the information that we gave you at the time you signed your employment letter. If you do not complete this request by that day, then we will be forced to withdraw our offer.

We encourage you to complete this requirement so that we can move forward.

Sincerely yours,

Ann G. Appleton – Interim Assistant Dean- ESS

EXHIBIT NO. 15
Moberly
AMS DEPO

*An affirmative action/equal opportunity institution*