## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**JASON MOBERLY,**

        **Plaintiff**

        **v.**                         **C-1-08-569**

**UNIVERSITY OF CINCINNATI**
**CLERMONT COLLEGE,** *et al.,*

        **Defendants**

    This matter is before the Court upon the Report and Recommendation of the United States Magistrate Judge (doc. no. 27), plaintiffs' objections (doc.  no. 28) and defendants' response (doc. no. 29).  The Magistrate Judge concluded that no genuine issues of material fact are in dispute and recommended that defendants' Motion for Summary Judgment (doc. no. 13) be granted.

    Plaintiff objects to the Magistrate Judge's Report and Recommendation on the grounds that his findings are contrary to law.

2

**I.**

In 2007, plaintiff contacted Coach Hurly, the head basketball coach at Clermont College, and expressed an interest in being hired as the assistant coach. It was too late in the year for Clermont to hire him so plaintiff was not interviewed; however, plaintiff helped Coach Hurley with the team during the 2007-08 season.

Following the 2007-08 season, Clermont Athletic Director Brian Sullivan informed plaintiff that if he wanted to continue coaching at Clermont in 2008-09, he would need to apply and interview for the assistant coach position. Mr. Sullivan and Coach Hurley informed plaintiff that Clermont had to follow the University's formal hiring process and interview at least three applicants before plaintiff could be offered the job. Plaintiff applied for the position and interviewed for the assistant coach position in June 2008 before Kim Ellison, Clermont Director of Student Life, Mr. Sullivan, Athletic Director, and Coach Hurley. Plaintiff knew that Ms. Ellison, Mr. Sullivan, and Coach Hurley had interviewed two other candidates

for the position.  Plaintiff knew that he might not be selected for the assistant coach position.  Following the interview, Coach Hurley called plaintiff and told him that he probably would receive the position.  Coach Hurley assumed that it was up to him to decide who he wanted to be the assistant coach and he wanted plaintiff to be hired.  Plaintiff understood that Coach Hurley was not offering him the job and that the hiring process was not complete.

Later in June 2008, Coach Hurley informed plaintiff that some things had come up and Ms. Ellison, who oversaw intercollegiate athletics, wanted to go in a different direction.  On June 16, 2008, plaintiff called Karen Faaborg, the University's viceprovost at the main campus.  Plaintiff asked Ms. Faaborg whom he should talk to about discrimination at Clermont.  He also told her that he was concerned that he might not receive the assistant coach position. Ms. Faaborg set up meetings for plaintiff to discuss his concerns with Clermont's Dean, James McDonough, and the University's Director of Equal Opportunity, George Wharton.

4

On June 23, 2008, Ms. Ellison and Mr. Sullivan offered the assistant basketball coach position to Keith Starks, another candidate who had applied for the job. Ms. Ellison reviewed the three candidates' credentials earlier in the month. On the morning of June 23, 2008, Ms. Ellison and Mr. Sullivan called Mr. Starks to offer him the job, and then called Coach Hurley to inform him of their decision. Coach Hurley then informed plaintiff that he was not selected for the position.

Upon being advised that he had not been hired as the assistant basketball coach, plaintiff contacted George Wharton, the University's Director of Equal Opportunity. Plaintiff discussed with Mr. Wharton alleged instances of race discrimination at Clermont toward members of the men's basketball team. Plaintiff complained to Mr. Wharton about not getting the assistant coach position. Mr. Wharton asked plaintiff to send his complaints to him in writing together with any documentation that he had. Plaintiff wrote a letter describing his retaliation claim and a list outlining the

5

discrimination he observed.  Plaintiff sent the letter and list to Mr. Wharton on July 2, 2008.

Plaintiff previously contacted Dean McDonough on June 25, 2008. Plaintiff provided details about alleged discrimination toward members of the men's basketball team in his conversation with Dean McDonough.  After their conversation, plaintiff sent Dean McDonough an email stating:  "I would also like to know how my coaching position is coming because I can either move on to another college or I can get in touch again with Mr. Wharton at the main campus, and my lawyer to see what other actions need to be done."

After Mr. Starks verbally accepted the assistant coach position on June 23, 2010, Clermont sent him a letter informing him that he needed to undergo a preemployment criminal records background check.  Mr. Starks never responded.  After several unsuccessful attempts to contact Mr. Starks by phone, Clermont rescinded its offer to him.  On August 21, 2008, Ann Appleton, Clermont's

6

Assistant Dean, spoke to plaintiff by phone and offered him the job. Plaintiff signed a letter accepting the position on October 3, 2008. Plaintiff's job as the assistant coach started on October 19, 2008. Plaintiff accepted the position before the beginning of Clermont's 2008-09 basketball season. He satisfactorily performed his duties. Because he was a regular Clermont employee, plaintiff did not need to interview for the position for the 2009-10 year. Plaintiff continued as Clermont's assistant men's basketball coach for the 2009-10 season. Plaintiff does not claim that Clermont owes him any backpay.

## II.

Plaintiff specifically objects to the Magistrate Judge's finding that no genuine issues of fact exist with regard to whether Mr. Moberly engaged in protected activity. The Magistrate Judge found that Mr. Moberly's deposition testimony foreclosed his assertion that he informed Karen Faaborg that he was opposed to the discriminatory treatment of African Americans at Clermont College

and that, "even if plaintiff did tell Ms. Faaborg that his complaints related to discrimination," his comments were "insufficient as a matter of law to show protected, opposition activity." Plaintiff argues that these findings are premised upon an unduly narrow reading of the evidentiary record as well as misapplication of relevant case law and a wholesale rejection of the Supreme Court's directive to draw inferences in favor of the non-moving party when deciding a motion filed pursuant to Fed. R. Civ. P. 56.

Plaintiff filed this lawsuit against Clermont College, Ms. Ellison, Clermont Assistant Dean Ann Appleton and Clermont Dean James McDonough because he was not Clermont's first choice for the position.  Mr. Moberly claimed discrimination under Title VI, 42 U.S.C. § 2000d, et seq., discrimination and retaliation under 42 U.S.C. § 1981 and retaliation for exercising free speech under 42 U.S.C.§ 1983.

8

To succeed on his Title VI claim against Clermont, plaintiff must prove that (1) he engaged in activity protected by Title VI, (2) this exercise of protected rights was known to defendants, (3) defendants thereafter took a materially adverse action against Mr. Moberly, and (4) there was a causal connection between the protected activity and the materially adverse action. The Magistrate Judge recommended dismissal of Mr. Moberly's Title VI claim because he failed to establish a *prima facie* case.

This Court agrees.

Plaintiff did not suffer a materially adverse action. The Magistrate Judge correctly reasoned that the Title VI claim fails because defendants did not take a materially adverse job action against plaintiff. As the Magistrate Judge observed, the fact that Clermont initially offered the position to Mr. Sparks was not an adverse job action against the plaintiff. When Mr. Starks failed to accept the position, Clermont offered the job to plaintiff on August 21, 2008, approximately two months after his interview and several

months before the beginning of the basketball season and the start of the position.

The Magistrate Judge recommended granting summary judgment against plaintiff and in favor of individual defendants on his Section 1981 claim. Plaintiff acknowledges that the same analysis applies to his Title VI claim and his Section 1981 claim. For the reasons set forth in the Report and Recommendation, the Court grants summary judgment against plaintiff in favor of the individual defendants on plaintiff's Section 1981 claim.

Plaintiff argues that the Magistrate Judge erred by stating that there was no evidence that plaintiff "spoke publicly" about discrimination. The issues plaintiff eventually raised with the main campus (although not before June 23, 2008) related to eligibility requirements for the basketball team, academic and financial assistance, and other issues related to players on the team. All his complaints related to his job duties as an assistant basketball

10

coach and his speech is unprotected by the First Amendment. Plaintiff's Section 1983 claim has no merit.

### III.

### <u>CONCLUSION</u>

Upon a *de novo* review of the record, especially in light of plaintiff's objections, the Court finds that the record, as a whole, could not lead a rational trier of fact to find for the plaintiff on any of his claims, and that plaintiff's objections have either been adequately addressed and properly disposed of by the Judge or present no particularized arguments which require further specific responses by this Court. The Court finds that the Magistrate Judge has accurately set forth the controlling principles of law and properly applied them to the particular facts of this case and agrees with the Judge.

11

Accordingly, the Court hereby ADOPTS  the Report and Recommendation of  the United States  Magistrate Judge (doc. no. 27).   Defendants' Motion for Summary Judgment (doc. no. 13) is GRANTED and this case is DISMISSED AND TERMINATED on the docket of this Court.

IT IS SO ORDERED.


            s/Herman J. Weber            
Herman J. Weber, Senior Judge
United States District Court